**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SEAN GUNDERSON,

        Plaintiff,

    v.

JAMES P. CORCORAN, *et al.*,

        Defendants.

No. 21-cv-04891
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sean Gunderson (Gunderson) was charged with attempted murder, in the Circuit Court of Cook County. After being found Not Guilty by Reason of Insanity (NGRI) he was involuntarily committed to the Elgin Mental Health Center (Elgin). After he was released, Gunderson sued Elgin senior administrators and psychiatrists James Corcoran and Richard Malis and senior administrators William Epperson and Thomas Zubik (collectively Defendants), alleging that he was confined long after he no longer met the clinical criteria for confinement, thereby violating his Fourth, Eighth, Thirteenth, and Fourteenth Amendment rights, among other claims. R.[1] 6, FAC. Defendants move to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 7, Mot. Dismiss. For the reasons that follow, the Court grants Defendants' motion to dismiss.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

### Background[2]

In 2002 Gunderson was charged with attempted murder in the Circuit Court of Cook County, Illinois. FAC ¶ 8. After being found NGRI in 2005, he was involuntarily committed to Elgin under the Illinois Department of Human Services' (IDHS) custody with a *Thiem* date (release date) of July 2053. *Id.* ¶¶ 8, 13. During his involuntary confinement, IDHS prescribed psychiatric drugs to treat Gunderson's mental, emotional, and behavioral problems. *Id.* ¶ 12. In December 2011, Gunderson elected to try a different course of treatment including a vegan diet, daily exercise, mediation, and forgoing psychotropic drugs, as well as participating in individual counseling and group and activity therapy at Elgin. *Id.* ¶ 13. Gunderson went into full remission. *Id.* Around this time, Gunderson began to advocate for changes at Elgin, including the right to refuse psychotropic medications. *Id.* ¶ 14. Defendants, posits Gunderson, found his complaints and advocacy to be a nuisance between 2011 and 2019. *Id.* ¶ 15.

Defendants, perceiving Gunderson as a threat, began efforts to discredit him and portray him as unrecovered and mentally ill. FAC ¶ 17. To that end, Defendants delayed Gunderson from being conditionally released for approximately two years, by falsifying legal documentation reporting Gunderson's progress, providing false testimony, confiscating Gunderson's electronics through false documentation, and using false information to punish Gunderson by transferring him to a different unit

---

[2]The Court accepts Gunderson's well-pleaded factual allegations as true and draws all reasonable inferences in his favor. *See Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017); *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

amid health-related progress. *Id.* ¶¶ 17–22. These efforts led to Gunderson's petitions for conditional release being denied. *Id.* ¶ 17.

Additionally, Gunderson experienced sexual harassment, sexual battery, and sexual misconduct by various staff members at Elgin that went unreported. FAC ¶ 23. Defendants also refused to accommodate Gunderson's requests for proper food for a vegan diet. *Id.* ¶ 40(b).

Gunderson was unconditionally discharged from state custody on April 12, 2021. *Id.* ¶ 8. After his unconditional discharge, Gunderson filed this multi-count lawsuit under 42 U.S.C. §§ 1983, 1985, and 1988 asserting claims of: false imprisonment under the Fourth Amendment (Count I); improper treatment during confinement, cruel and unusual punishment, excessive "fine" by extended deprivation of liberty under the Eighth Amendment (Count II); denial of due process of law under the Fourteenth Amendment (Count III); conspiracy to interfere with civil rights, obstructing justice under 42 U.S.C. § 1985 (Count IV); slavery or peonage in violation of the Thirteenth Amendment and 42 U.S.C. § 1994 (Count V); and state law healing art malpractice against Corcoran and Malis under 735 ILCS 5/2-622 (Count VI). Defendants' fully briefed Rule 12(b)(1) and 12(b)(6) motion to dismiss is before the Court.

## Legal Standard

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the

burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor*, 875 F.3d at 853 (citing *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digit.*, 572 F.3 at 444 (internal citations omitted).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Defendants argue that the Court lacks subject matter jurisdiction over Gunderson's claims, and that he fails to state a claim. Defendants' jurisdictional argument is that Gunderson's claims are barred by the *Rooker-Feldman* doctrine because his claims are intertwined with a state-court judgment. *Id*. at 8–10. For their Rule 12(b)(6) motion, first, Defendants argue that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Gunderson's false imprisonment, due process, conspiracy, slavery, and constitutionally improper treatment claims because his claims call a state court ruling into question or otherwise invalidate his NGRI conviction. R. 8, Memo. Dismiss at 5–8. Second, in the alternative, Defendants contend that Gunderson fails to state a Fourth Amendment, Eighth Amendment, Thirteenth Amendment, or 42 U.S.C. § 1985 claim. *Id*. at 10–13. Finally, Defendants request that the Court relinquish supplemental jurisdiction over Gunderson's state law claim. *Id*. at 13–14. The Court addresses each argument in turn.

## I.    Rule 12(b)(1) – *Rooker-Feldman* Doctrine[3]

Defendants move to dismiss the amended complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, arguing that Gunderson's false

---

[3]Although Defendants' motion to dismiss first argues that Gunderson's claims are barred by the *Heck* doctrine, the Court starts with *Rooker-Feldman*, as it concerns the Court's subject

imprisonment, due process, conspiracy, and slavery claims are "inextricably intertwined" with a state court judgment. Memo. Dismiss at 8–10 (citing *Jakupoic v. Curran*, 803 F.3d 898 (7th Cir. 2017)).

The *Rooker-Feldman* doctrine is a "narrow" doctrine that precludes federal district court jurisdiction "over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced." *Sykes v. Cook Cty Cir. Ct. Probate Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016) (citing *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)). In effect, lower federal courts—such as this one—are not vested with appellate authority over state courts. *Id.* Rather, "the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). The rationale for the *Rooker-Feldman* doctrine is that "no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." *Sykes*, 837 F.3d at 742.

To determine whether the *Rooker-Feldman* doctrine bars jurisdiction, courts apply a two-step analysis. *Andrade v. City of Hammond*, 9 F.4th 947, 950 (7th Cir. 2019). At step one, courts consider whether "a plaintiff's federal claims are independent or, instead, whether they either directly challenge a state court

---

matter jurisdiction, unlike *Heck. See Andrade v. City of Hammond, Indiana*, 9 F.4th 947, 950 (7th Cir. 2021) (if a case is subject to *Rooker-Feldman*, the district court is stripped of jurisdiction over it); *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019) ("*Heck* concerns timing rather than subject-matter jurisdiction.").

judgment or are inextricably intertwined with one." *Id.* (cleaned up).[4] "If they are independent claims, the *Rooker-Feldman* doctrine does not preclude federal courts from exercising jurisdiction over them. But if they directly challenge or are inextricably intertwined with a state-court judgment," then courts move onto step two. *Id.* (cleaned up). "The 'inextricably intertwined' determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Sykes*, 837 F.3d at 742 (cleaned up). At step two, courts "determine whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings." *Andrade*, 9 F.4th at 950. "Only if the plaintiff did have such an opportunity does *Rooker-Feldman* strip federal courts of jurisdiction." *Id.*

Defendants maintain that Gunderson's claims that he was involuntarily committed in violation of his due process rights, falsely imprisoned, or enslaved at Elgin would require a determination that a state court was mistaken in finding Gunderson in need of inpatient health treatment or otherwise require overturning the state court's order. Memo. Dismiss at 9. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

The Court begins with an overview of a NGRI finding. Under Illinois law, "[w]hen an individual has been acquitted of a crime by reason of insanity, [his]

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

subsequent treatment is governed by section 5-2-4" of the Unified Code of Corrections, 730 ILCS 5/5-2, *et seq. People v. Jurisec*, 766 N.E.2d 648, 653 (Ill. 2002). Section 5-2-4 authorizes the Illinois Department of Human Services (IDHS) to take custody of an individual (or insanity acquittee) in order to treat his or her mental illness while also protecting him or her and the community from his or her potential danger. *Id*. Under Section 5-2-4(a) an insanity acquittee may be committed to the custody of IDHS if the circuit court finds that he or she needs "mental health services on an inpatient basis." 730 ILCS 5/5-2-4(a). Once an insanity acquittee has been committed to the custody of IDHS, "he may be detained only as long as he continues to be 'subject to involuntary admission' or 'in need of [inpatient] mental health services." *Jurisec*, 766 N.E.2d at 653 (quoting 730 ILCS 5/5-2-4(b)). To remain in the custody of IDHS, an insanity acquittee must remain dangerous and mentally ill, because "[a]s a matter of due process, it [is] unconstitutional for a State to continue to confine a harmless, mentally ill person." *People v. Bryson*, 115 N.E.3d 362 (Ill. App. Ct. 2018) (cleaned up).

When the facility director of a state operated mental health facility determines that the insanity acquittee no longer needs mental health services on an in-patient basis, but still needs mental health services, the director must issue a recommendation to the circuit court, the State, and the insanity acquittee that the individual should be conditionally released, and propose the terms of that conditional release. 730 ILCS 5/5-2-4(d). Within 30 days of the recommendation, the circuit court must set a hearing date and making a finding that the insanity acquittee: (1) needs mental health services on an in-patient basis; (2) needs mental health services but

not on an in-patient basis; or (3) no longer needs mental health services. *Id*. An insanity acquittee, "or any person on his behalf, may file a petition for treatment plan review or discharge or conditional release" before the circuit court. *Id*. § 5-2-4(e). "Upon receipt of a petition for treatment plan review or discharge or conditional release, the Court shall set a hearing to be held within 120 days." *Id*. At a hearing initiated by an insanity acquittee's petition, the insanity acquittee has the burden to prove by clear and convincing evidence that he or she no longer needs mental health services on an in-patient basis, 730 ILCS § 5-2-4(g), meaning that he or she is not reasonably expected to inflict serious physical harm upon himself or another, *id*. § 5-2-4(a-1)(B).

If the circuit court determines that the insanity acquittee still needs mental services on an in-patient basis, the court must order that the insanity acquittee remain in the custody of IDHS. 730 ILCS § 5-2-4(a), (d). If the court determines that the insanity acquittee needs mental health services, but not on an in-patient basis, the court must conditionally release him or her under such conditions that "will reasonably assure the [insanity acquittee's] satisfactory progress and participation in treatment or rehabilitation and the safety of" himself or herself and others. *Id*. On the other hand, if the court determines that the insanity acquittee no longer needs mental health services, the court must order that he or she be released from IDHS custody. *Id*.

The Court finds Gunderson's federal claims barred by the *Rooker-Feldman* doctrine.[5] At first blush, Gunderson's argument that he does not challenge any state court decision—that is, that he agrees with the circuit court's NGRI verdict and finding that he was a person with mental illness in need of mental health treatment on an in-patient basis, as well as the *Thiem* date set by the court—as well as his argument that he is a "state court winner" since the state court unconditionally released him on in April 2021, are persuasive. R. 18-1, Resp. at 8–10. However, a closer look at the statutory scheme shows that Gunderson's claims based on Defendants' actions that caused him to be imprisoned longer than he should have been in fact seek to overturn or are inextricably intertwined with the state court decisions.

To the extent Gunderson's claims take issue with the denial of his petitions for conditional release, *see* FAC ¶¶ 28, 47, 57–58, 70, such claims directly challenge a state court decision. And to the extent Gunderson's claims are based not on the denial of his petitions, but rather on Defendants' actions causing a delay in the circuit court's eventual grant of conditional (and eventually unconditional) release, *see* FAC ¶¶ 17, 57–58, 70, his claims are inextricably intertwined with a state court judgment. In his

---

[5]As stated below, the *Rooker-Feldman* doctrine applies to any federal claim that challenges a state court judgment, unlike *Heck* which is arguably limited to § 1983 claims. *Compare Andrade*, 9 F.4th at 950 (*Rooker-Feldman* bars "a plaintiff's federal claims" that are inextricably intertwined with a state court judgment) *with Heck*, 512 U.S. at 487 (when a state prisoner seeks damages in a § 1983 suit" a district court must dismiss the complaint if a judgment in favor of the plaintiff would imply the invalidity of his conviction or sentence) However, the reasoning as to all of Gunderson's federal claims—brought under § 1983, § 1985, and the Thirteenth Amendment—challenging the length of his commitment is the same.

claims for false imprisonment, due process, conspiracy, and slavery, Gunderson's alleged injury is wrongful detention or imprisonment (or the length of such detention). As Defendants argue, this injury, however, is attributable to the state court orders finding him in need of in-patient mental health treatment and the decision not to conditionally release Gunderson earlier. Memo. Dismiss at 9 (citing *Nadzhafaliyev v. Dyslin*, 2021 WL 4206770, at \*3 (N.D. Ill. Sept. 16, 2021) (claim of wrongful detention barred by *Rooker-Feldman*)). Defendants correctly point out that under the Uniform Code of Corrections, the state court is solely responsible for determining the continued necessity of in-patient treatment. *See* § 5-2-4(a), (d). Despite Gunderson's protestation that he does not challenge the underlying NGRI adjudication, but rather takes issue with Defendants' falsities, his alleged injuries stemming from those falsities—that is, prolonged imprisonment and the attendant psychological, emotional, and physical harm—at bottom were caused by the state court's ruling finding him NGRI and denying (or failing to grant) his conditional release petitions. *See, e.g.*, *Brokaw v. Weaver*, 305 F.3d 660, 666–67 (7th Cir. 2002) (although a plaintiff's federal claim related to false information presented to a state court may ultimately show that a state court judgment was erroneous does not mean it is automatically barred by *Rooker-Feldman*, such claims are barred if the plaintiff's alleged injury was caused at least in part by the state court's ruling, so long as plaintiff had a reasonable opportunity to raise his or her claims in state court). The Court agrees with the two factually similar cases cited by Defendants in which the courts found that, pursuant to the statutory scheme, the plaintiff's federal claims that

they were civilly committed too long after being adjudicated NGRI were barred under *Rooker-Feldman*. *See* Memo. Dismiss at 9 (citing *Nadzhafaliyev*, 2021 WL 4206770, at \*3); R. 19, Reply at 3 (citing *Dopson v. Corcoran*, 2020 WL 3268513, at \*6 (N.D. Ill. June 17, 2020)).

Gunderson attempts to distinguish *Nadzhafaliyev* in his sur-response, arguing that there were no allegations in that case that the defendants intentionally falsified records before the state court. R. 20-1, Sur-Resp. at 2. Contrary to Gunderson's characterization of the allegations in *Nadzhafaliyev*, however, the plaintiff in fact alleged that the defendants "based their recommendations [for discharge] on 'fraudulent' information about his disciplinary history and immigration status and engaged in 'artifice' to keep him confined." 2021 WL 4206770, at \*3. The court found that plaintiff's allegations, in "essence, [were] assertions that the state court did not consider the correct information when evaluating Plaintiff's need for inpatient treatment." *Id.* So too here: Gunderson's allegations that Defendants provided false information to the state court in order to prolong his detention are "inextricably intertwined" with the state court's decision as to his conditional release, which, as discussed earlier, in solely in the hands of the state court. 730 ILCS § 5-2-4(a), (d).

Gunderson relies on *Burke v. Johnston,* 452 F.3d 665 (7th Cir. 2006) in opposition to Defendants' *Rooker-Feldman* argument, but the Court finds his reliance on this case unavailing. Resp. at 7. In *Burke*, the state court denied the plaintiff jail credit he believed he was owed: but the plaintiff did not challenge that decision, as eventually department of corrections officials gave him the credit. *Id.* at 668. Instead,

the plaintiff filed suit against Department of Correction officials for taking too long to administratively grant him jail credit. The Seventh Circuit determined that the *Rooker-Feldman* doctrine (*Heck* was not raised) did not bar the plaintiff's § 1983 deliberate indifference claim against jail officials for taking too long to give him jail credit. *Id*. 666–69. Such administrative modification was separate and apart from the state courts' sentencing decisions, and as the Seventh Circuit pointed out, the state courts never decided whether the department of corrections personnel who ultimately awarded the plaintiff jail credit took too long to do so and therefore were deliberately indifferent. *Id*. Here, contrary to Gunderson's position, Defendants' alleged false reports and statements did not, on their own, delay his release because, pursuant to the Unified Code of Corrections, Defendants could not release Gunderson without a state court order. *See* 730 ILCS § 5-2-4(a), (d), (g). Accordingly, the Court agrees with Defendants that—except for the conditions of confinement claims discussed below— the first prong of *Rooker-Feldman* is satisfied.

As stated above, even if a plaintiff's claims are inextricably intertwined with a state court judgment, such claims are barred under *Rooker-Feldman* only if he or she "had a reasonable opportunity to raise the issues in state court proceedings." *Jakupovic*, 850 F.3d at 904. "The reasonable opportunity inquiry focuses . . . on difficulties caused by factor[s] independent of the actions of the opposing part[ies] that precluded a plaintiff from bringing federal claims in state court, such as state court rules or procedures." *Id*. (cleaned up). As to this second prong, the Court also agrees with Defendants that Gunderson had a reasonable opportunity to raise in

13

state court proceedings his claims that Defendants' false statements and actions caused him to be detained too long. Memo. Dismiss at 9–10. Illinois law provides for an insanity acquittee to petition for conditional release, which Gunderson alleges that he did, and once a petition is filed, the state court is required to hold a hearing at which Gunderson was entitled to counsel. 730 ILCS 5/5-2-4(c), (e), (g). Gunderson does not argue that he was prevented from arguing before the state court that Defendants provided false statements or other evidence. As such, the Court finds that Gunderson has not met his burden in establishing subject matter jurisdiction as to his false imprisonment, due process, conspiracy, and slavery claims challenging the length of his confinement.

To the extent that Defendants argue that Gunderson's constitutionally improper treatment claim is barred by *Rooker-Feldman* (or *Heck*), the Court disagrees as to Gunderson's allegations regarding sexual misconduct and failure to accommodate his vegan diet, as these allegations relate to Gunderson's conditions of confinement, not the commitment itself. *See Dopson*, 2020 WL 3268513, at *5–6 (N.D. Ill. June 17, 2020) (citing *Schloss v. Wilczynski*, 694 F. App'x 1020, 1023 (7th Cir. 2017) (concluding *Heck* did not bar a civil detainee's claim that he was not receiving constitutionally proper mental health care); *O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006) (*Rooker-Feldman* did not bar an inmate's Eighth Amendment claims against prison medical officials relating to their execution of a state court's force-feed order)). However, for the reasons stated below, the Court finds that these allegations are insufficient as pled to state a claim. *See infra* Section II.b. The Court cannot

discern a federal constitutional claim based on inadequate mental health care (that is, the quality of the care itself, not the fact that Gunderson was being treated), but such a claim likely would not be barred by *Rooker-Feldman* or *Heck*, either. *See Dopson*, 2020 WL 3268513, at *5–6. However, the Court agrees with Defendants that, to the extent Gunderson's improper treatment claim is premised on allegations that Defendants falsely alleged that Gunderson was mentally ill and therefore prolonged his commitment, or that his treatment was wrongful *because* he was not in need of commitment, such claims would undermine the state court's decision to find Gunderson NGRI and when to grant Gunderson conditional release.

The Court turns to Defendants' alternative argument that Gunderson's federal claims are barred pursuant to *Heck v. Humphrey*. Memo. Dismiss at 5–8; *see Dopson*, 2020 WL 3268513, at *6 (considering Defendants' alternative arguments based on *Heck* and *Rooker-Feldman*); *see also Haddad v. Brown*, 2012 WL 2920991, at *1 (N.D. Ill. July 16, 2012) (considering *Rooker-Feldman* and statute of limitations in alternative, and noting that prior order considered *Rooker-Feldman* and *Heck*).

## II.     Rule 12(b)(6)

### A. *Heck* Doctrine

In *Heck v. Humphrey*, the Supreme Court held that a § 1983 claim cannot proceed if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction . . . unless the plaintiff can demonstrate that the conviction . . . has already been invalidated." 512 U.S. at 487; *see Burd v. Sessler*, 702 F.3d 429, 432 (7th Cir. 2012) (citing *Nelson v. Campbell*, 541 U.S. 637, 646–47 (2004)); *see also McCann*

*v. Neilsen*, 466 F.3d 619, 622 (7th Cir. 2006) (stating a complaint cannot "contain factual allegations that necessarily imply the invalidity of his convictions") (cleaned up). The purpose of the *Heck* doctrine is to prevent "collateral attack on [a] conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484 (cleaned up). This means that Gunderson may not pursue a § 1983 claim[6] if success on that claim would necessarily imply that the denial of his petitions for conditional release was invalid.

"As an initial matter, the Seventh Circuit has consistently applied *Heck* to plaintiffs who have been civilly committed." *Dopson*, 2020 WL 3268513, at *5 (citing,

---

[6]As stated above, Defendants seek dismissal of all of Gunderson's federal claims pursuant to the *Heck* doctrine. However, not all of Gunderson's federal claims are brought pursuant to Section 1983. Specifically, Count IV alleges a claim under § 1985 and Count V alleges a violation of the Thirteenth Amendment and 42 U.S.C. § 1994. Gunderson does not raise this issue in his Response, but rather argues only that *Heck* does not bar any of his claims.

Recently, the Seventh Circuit implied—but did not explicitly hold, as the claim was not before the court—that *Heck* applies to claims under § 1985. *Kimberlin v. United States Dep't of Just.*, 2023 WL 2987579, at *2 (7th Cir. Apr. 18, 2023) (citing *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999)). Additionally, in a non-precedential case, the Seventh Circuit affirmed the district court's dismissal of all of plaintiff's claims, including a 1985 claim, citing *Heck* and noting that *Heck* suggested that the doctrine "applies to all civil rights damage claims that are analogous to malicious prosecution claims." *Beaven v. Young*, 175 F.3d 1019 (7th Cir. 1999). Additionally, other cases in this District have found that *Heck* applies to § 1985 claims. *See, e.g.*, *Dean v. Disalvo*, 2015 WL 1585858, at *2 (N.D. Ill. Apr. 2, 2015); *Horton v. Marovich*, 925 F. Supp. 532, 538 (N.D. Ill. 1996). However, in the absence of any argument from the parties or precedential Seventh Circuit authority explicitly so holding, the Court does not definitely decide the issue at this time.

Additionally, often Thirteenth Amendment claims are brought under § 1983, *see, e.g.*, *Walton v. Claybridge Homeowners Ass'n, Inc.*, 433 F. App'x 477, 478 (7th Cir. 2011); *Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997), but Gunderson does not so specify here, and again, the Court declines to decide the issue—that is, whether *Heck* bars Gunderson's Thirteenth Amendment/§ 1994 claim as pled—without knowing the parties' positions.

Ultimately, for purposes of this motion, it matters not whether these claims are barred by *Heck*, as the Court finds that the Court lacks subject matter jurisdiction over them pursuant to the *Rooker-Feldman* doctrine.

among other cases, *Henderson v. Bryant*, 606 F. App'x 301, 304 (7th Cir. 2015)). This includes claims "brought by plaintiffs who were civilly committed following a NGRI adjudgment." *Id.* (cleaned up).

As stated above, Defendants argue that Gunderson's claims call into question his involuntary commitment. Memo. Dismiss at 5–8. Therefore, reason Defendants, the *Heck* doctrine bars Gunderson's false imprisonment, improper treatment, due process, conspiracy, and slavery claims. *Id.* Not so, counters Gunderson, as he is not a "state-court loser" complaining of injuries caused by a state court action, nor does he seek to have any state court judicial decision reviewed or overturned. Resp. at 12–13.

The Court finds that Gunderson's allegations come within the purview of the *Heck* doctrine. The essence of Gunderson's complaint is that Defendants falsely imprisoned him and otherwise violated his constitutional rights because they interfered with his ability to receive a conditional release by knowingly falsifying evidence and testimony in court proceedings. *See* FAC ¶ 17 ("as a direct result of [Defendants'] machinations, [Gunderson's] petitions for conditional release were not granted until at least two years later than they otherwise could have been granted, during which time the Plaintiff remained involuntarily confined at Elgin Mental Health Center contrary to the intent of the law."); *see also id.* ¶¶ 28, 40, 57–58; 47, 70. Gunderson contends that *Heck* does not apply because he "does not challenge his NGRI verdict, his diagnosis of mental illness, or his involuntary commitment" and points out that he was conditionally released in October 2019 and unconditionally

discharged in April 2021, which, according to Gunderson, means he is a "state court winner." Resp. at 13–14. But at bottom, Gunderson challenges the state court's decision to deny his petitions for conditional release. *See Dopson*, 2020 WL 3268513, at *5 (finding that allegation that defendants interfered with plaintiff's "ability to receive conditional release and thereby falsely imprisoned him . . . directly challenge[ed] the state court's determination of the proper commitment term" and noting that "under Illinois law, the state court retained control over assessing [plaintiff's] eligibility for conditional release"). Without pointing to any authority in support, Gunderson insists that the fact that Defendants presented *false* evidence to the state court means his claims do not implicate any state court decisions and therefore do not implicate *Heck*. *See* Resp. at 15–16. But it was the state court who retained control over assessing the evidence presented when deciding Gunderson's eligibility for conditional release. *See* 730 ILCS § 5-2-4(a), (d), (g).  In short, *Heck* bars Gunderson's challenge to the length of his confinement, including the failure to receive conditional release, because it directly disputes the length of his civil commitment, as determined by the state court.

The Court finds the only two cases cited by Gunderson in opposition to Defendants' dismissal arguments based on *Heck* to be distinguishable. Resp. at 14–16. In *Lawrence v. Corcoran*, a case factually similar to this case, the defendants did not move to dismiss the complaint on the basis of lack of jurisdiction, but instead only moved to dismiss the complaint for failure to state a claim, which the district court denied. 2020 WL 6132232, at *1–4 (N.D. Ill. Oct. 19, 2020). Because the court was not

presented with an argument that the plaintiff's claims were barred by the *Heck* or *Rooker-Feldman* doctrines, it did not address them and therefore *Lawrence* does not aid the Court's determination of whether those doctrines bar Gunderson's claims. Gunderson also points to *Burke*, 452 F.3d 665, but that case involved the *Rooker-Feldman* doctrine rather than *Heck*, and as discussed above, *see supra* Section I, the Court finds *Burke* to be factually distinguishable from this case.

In sum, the Court agrees with Defendants' alternative argument that Gunderson's Section 1983 claims—apart from the conditions of confinement, as discussed above—are barred by the *Heck* doctrine. The Court does not address Defendants' alternative argument about the sufficiency of Gunderson's claims, apart from his claims relating to the conditions of confinement, which the Court finds not to be barred by *Rooker-Feldman* or *Heck*.

### B. Sufficiency of Claims

Finally, while not clearly articulated, it would appear that in addition to challenging the basis for the denial of his petitions for conditional release, Gunderson also complains of the conditions of his confinement. Specifically, he alleges that he was sexually harassed when two female staff members, over a period of months, rubbed their buttocks against his genital area while playing soccer. FAC ¶ 23. This claim, however, is conclusory and not sufficiently pled.

Additionally, Gunderson alleges that he received constitutionally improper treatment because he was not provided a vegan diet. FAC ¶ 40(b). The Court agrees with Defendants, that as currently pled, Gunderson fails to state a constitutional

deprivation on this basis, as detainees are not entitled to meals of their choosing so long as they are offered a constitutionally adequate diet absent other considerations. Reply at 7 (citing *Quarles v. Thole*, 2020 WL 6583092, at \*4 (S.D. Ill. Nov. 10, 2020)). Of course, if the diet provided was injurious to Gunderson's health, that may be sufficient to state a claim. *See, e.g.*, *Green v. Wexford Health Sources*, 2013 WL 139883, at \*8 (N.D. Ill. Jan. 10, 2013).

Finally, the Court addresses the parties' argument as to whether Gunderson's improper treatment claims are properly brought under the Eighth Amendment. *See* Resp. at 20 (Eighth Amendment applies to Gunderson's claims); Reply at 6 (the Fourteenth Amendment's objectively unreasonable standard applies). The Court again agrees with Defendants. As the court found in *Dobson*, "[t]he due process clause of the Fourteenth Amendment prohibits the use of excessive force against individuals committed after being adjudicated NGRI." 2020 WL 3268513, at \*3 (citing *Green v. Beth*, 770 F. App'x 273, 275 (7th Cir. 2019) (explaining that "[t]he Fourteenth Amendment governs a state's obligations to pretrial detainees" and evaluating the pretrial detainee's deliberate indifference claim under the Fourteenth Amendment); *Webber v. Hussain*, 2016 WL 2958370, at \*4 (N.D. Ill. May 23, 2016) ("[A]n involuntarily committed patient is in the same position as a pretrial detainee in the context of an excessive force claim under the Fourteenth Amendment.")). Such a finding in fact favors Gunderson, as the Fourteenth Amendment applies only a "objectively unreasonable" standard, whereas the Eighth Amendment applies

"subjective unreasonableness" standard. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 350–52 (7th Cir. 2018).

The Court therefore dismisses Gunderson's conditions of confinement claims without prejudice for failure to state a claim.

## C. State Claim

Last, Defendants argue that since Gunderson fails to state any federal claims the Court should decline to exercise federal jurisdiction over his state claims. Memo Dismiss at 13–14. Notably, Gunderson fails to address this argument. No matter, as the Court agrees.

The Court has supplemental jurisdiction over Gunderson's state law claim pursuant to 28 U.S.C. § 1367(a). It is within the Court's discretionary authority to decline to exercise supplemental jurisdiction over state law claims once it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Baig v. Coca-Cola Co.*, 69 F. Supp. 3d 766, 781 (N.D. Ill. 2014), *aff'd*, 607 F. App'x 557 (7th Cir. 2015). Indeed, the Seventh Circuit has stated that in such circumstances, "the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). As a result, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Court, in the exercise of its discretion, declines to assert supplemental jurisdiction over Gunderson's state law claim.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss [7]. The Court lacks subject matter jurisdiction over Gunderson's federal claims—apart from certain conditions of confinement claims—under the *Rooker-Feldman* doctrine. In the alternative, the Court finds that the *Heck* doctrine bars Gunderson's Section 1983 claims, apart from certain conditions of confinement claims. Gunderson's federal claims—apart from certain conditions of confinement claims—are therefore dismissed without prejudice. The Court finds that Gunderson has failed to state a claim for improper treatment, but gives Gunderson leave to file an amended complaint alleging conditions of confinement claims under the Fourteenth Amendment. Any amended complaint is due by October 6, 2023. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claim in Count VI, and if no amended complaint asserting a claim over which the Court has original jurisdiction is filed by October 6, 2023, Count VI will automatically be dismissed without prejudice for refiling in state court.

Dated: September 15, 2023

_____
United States District Judge
Franklin U. Valderrama